J-A26025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.G., MOTHER | No. 848 MDA 2015 |

Appeal from the Order Entered April 20, 2015
in the Court of Common Pleas of Franklin County
Juvenile Division at No.: 33 Adopt 2013

| | |
|---|---|
| IN THE INTEREST OF: A.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.G., MOTHER | No. 849 MDA 2015 |

Appeal from the Order Entered April 20, 2015
in the Court of Common Pleas of Franklin County
Orphans' Court at No.: 31 Adopt 2013

| | |
|---|---|
| IN THE INTEREST OF: C.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.G., MOTHER | No. 850 MDA 2015 |

Appeal from the Order Entered April 20, 2015

J-A26025-15

in the Court of Common Pleas of Franklin County
Orphans' Court at No.: 32 Adopt 2013

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 17, 2015**

In these consolidated appeals[1], J.M.G. (Mother) appeals from the orders of the Court of Common Pleas of Franklin County, entered April 20, 2015, that terminated her parental rights to her children A.D., C.D., and K.D. (Children), and changed their permanency goals to adoption. We affirm.[2]

We consider these appeals on remand from our memorandum entered May 21, 2014, in which this Court reversed the trial court's order that dismissed the petition to terminate Mother's parental rights filed by Franklin County Children and Youth Service (CYS), and in which this Court reversed the trial court's order denying CYS' petition to change the Children's permanency goals to adoption. We remanded with instructions to determine the best interests of the Children pursuant to 23 Pa.C.S.A. § 2511(b), which the trial court had not yet considered when it dismissed CYS' petition.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated these appeals, *sua sponte*, on May 21, 2015.

[2] The trial court also terminated the parental rights of Child's father, D.R.D., II, on September 19, 2013; he did not appeal that termination.

- 2 -

This Court set forth the facts of this case, as related in our memorandum entered May 21, 2014, as follows:

We consolidated these nine appeals *sua sponte* and listed them before the same panel for disposition.[1]  In the appeals assigned docket Nos. 1602, 1603, and 1604 MDA 2013, the guardian *ad litem* appointed to represent [K.D.], A.D., and C.D. appeals from the orphans' court order entered on August 2, 2013.  In that order, the orphans' court dismissed the petition filed by [CYS] to involuntarily terminate [Mother's] parental rights to the three [C]hildren.  At Nos. 1878, 1879 and 1880 MDA 2013, the guardian *ad litem* appeals the September 19, 2013 juvenile court order denying CYS's petition to change the [C]hildren's permanency goal in the dependency proceedings from reunification to adoption.[2]  For its part, CYS challenges the juvenile court's September 19, 2013 order in the appeals assigned docket Nos. 1874, 1875, and 1876 MDA 2013.  As the nine appeals arise from identical facts and the trial court addressed the overlapping claims of error in concurrent opinions relating to the termination of parental rights and the goal change respectively, we consolidate the appeals for disposition, and after careful review, we reverse both orders and remand for further proceedings.[3]

CYS became involved with this family on December 12, 2011, when it received a referral from a child service agency in Texas alerting it that Mother and D.R.D., II ("Father") had relocated with [the Children] from Texas to Franklin County, Pennsylvania, in violation of an active child safety plan.  The following day, CYS placed the [C]hildren in its legal and physical custody.  Among other things, the Texas child safety plan prohibited Father from being in contact with the [C]hildren due to allegations that he sexually abused A.D. during August 2011 and due to a finding by the Texas agency of "reasons to believe," the evidentiary equivalent of the preponderance of the evidence, that the abuse occurred.

A brief history of Mother's and Father's extensive interactions with the Texas agency is warranted.  During 1999, the Texas agency found "reasons to believe" Father physically abused his twin infant children from a prior relationship.  Father was involved with the Texas agency again during 2001 based upon a "reason to believe" that he committed neglectful

supervision of two other children, the two-month-old daughter he had with his second wife and his second wife's four-year-old son. No criminal convictions flowed from any of the previous incidents. Mother was aware of Father's interactions with the Texas agency for those prior incidents. Additionally, while Mother and Father were dating during 2003, the Texas agency found "reasons to believe" that Father sexually abused Mother's daughter from her former marriage. Rather than terminate her relationship with Father after that revelation, Mother relinquished custody of her eldest daughter to her ex-husband, the child's birth father. All of the events occurred several years before Mother discovered Father was sexually abusing A.D. during August of 2011.

On January 19, 2012, the juvenile court adjudicated [K.D.], A.D., and C.D. dependent as the term is defined in 42 Pa.C.S. § 6302(1). The initial permanency goal was reunification. Both parents were determined to be perpetrators of abuse. Mother was designated perpetrator by omission, and the trial court found aggravated circumstances that would have otherwise relieved the agency from providing reunification services. Nevertheless, the juvenile court directed the agency to establish reunification services for Mother. The court relieved CYS from an obligation to provide Father reunification services.

The three [Children] currently reside together in a pre-adoptive foster home. At the time of the termination proceedings, the respective ages of [K.D.], A.D., and C.D. were eight, seven, and two years old.

Pursuant to the juvenile court's directive, CYS ordered services for Mother to participate in a parental fitness assessment, submit to psychiatric and psychological evaluations, attend parenting classes, maintain financial stability, appropriate housing, and consistent visitation with the [C]hildren. Mother never submitted to a psychiatric evaluation, but she participated in two parental fitness assessments that included several psychological components. Following those assessments, Mother was directed to participate in extensive counseling and CYS presented to her a list of acceptable providers. Mother complied with the counseling requirement for seven months between June of 2012 and January of 2013. However, Mother did not utilize any of the counselors whom CYS identified, and the counselors whom she selected independently proved to be ineffective at identifying and addressing her psychological needs. Mother

- 4 -

stopped attending counseling between January and June 2013. Despite working at a telephone call center in Maryland, Mother has not obtained independent housing. Instead, she continues to reside rent-free with her parents in Pennsylvania.

In relation to visitation with the [C]hildren, Mother has consistently attended her weekly supervised visitation. She was initially granted one hour of visitation per week, but the duration of the visits increased to three hours over the course of CYS's involvement. Visitation is still supervised, however, because of CYS's concerns that Mother is whispering inappropriate things to the [C]hildren during the visitations.

On June 18, 2013, CYS filed a petition to terminate Mother's and Father's parental rights and to change the permanency goal for [the Children] from reunification to adoption. As it relates to Mother, CYS's petition for termination of parental rights averred that the [C]hildren were removed from Mother's care on December 13, 2011, due to her failure to protect them from abuse following her knowing and voluntary violation of the Texas safety plan. Specifically, CYS alleged that while Mother acknowledged that she violated the safety plan by moving with Father and the [C]hildren to Pennsylvania, she did not understand how her decision placed the [C]hildren at risk.

During the ensuing hearings, CYS presented testimony from the CYS caseworker assigned to the family, two psychologists: Amy Taylor, Ph.D., who conducted an assessment of Mother's parental fitness, and Kasey Shienvold, Ph.D., who performed a bonding assessment among Mother, [the Children], the children's therapist, and the foster parents. The guardian *ad litem* presented Mother's testimony relative to the goal change proceedings. As we discuss below, neither Mother nor Father presented any evidence during the hearings.

With regard to the first issue we address in this appeal, the foster parents testified during the hearings that while [K.D.] and A.D. have been in their home, they have both disclosed additional incidents of sexual abuse perpetrated against them by Father while the family lived in Texas. The foster parents also testified that the two children indicated that they informed Mother about the additional incidents, but she failed to stop the abuse. [K.D.] and A.D. testified *in camera*.[4] Both children indicated that additional abuse occurred in Texas and confirmed that they informed Mother of those episodes.

- 5 -

At the close of CYS's case-in-chief on July 29, 2013, the trial court convened a hearing in chambers to (1) determine the propriety of terminating only one parent's parental rights and (2) discuss the *sua sponte* dismissal, in the nature of a compulsory nonsuit,[5] of CYS's petition against Mother. During the conference, the trial court concluded that the evidence CYS adduced during its case-in-chief to support terminating Mother's parental rights was insufficient to proceed. Therefore, the court announced its intention to dismiss that petition, and accordingly, it immediately entered an order that formally dismissed CYS' petition to terminate Mother's parental rights. In reference to Mother's putative testimony concerning the yet unresolved permanency and goal change issues, the trial court advised Mother's counsel, "the worst thing [he] could do is put [Mother] on the stand and say that this [additional abuse] did not happen."[6]

Thereafter, the court adjourned until August 2, 2013, when it reconvened the hearing regarding the termination of Father's parental rights and the goal change proceedings as to both parents. In the interim, Father, CYS, and the guardian *ad litem* filed petitions requesting that the trial court recuse from the ensuing termination and permanency proceedings. The trial court denied Father's and CYS's motions by orders entered on August 1, 2013, and it denied the guardian *ad litem's* motion in open court on the following day.

During the ensuing hearing on August 2, 2013, the guardian *ad litem* called Mother as a witness. After receiving additional evidence regarding the [C]hildren's permanency goals, the trial court entered an order on September 19, 2013, that denied CYS's petition to change the [C]hildren's permanency goal from reunification to adoption. Instead, the court directed CYS to provide Mother additional services to prepare her for reunification with the [C]hildren. These timely filed appeals followed.[7]

_____

[1] There were initially twelve related appeals. In a separate opinion, we affirmed the orphans' court order terminating the parental rights of the [C]hildren's father, D.R.D., II. Those appeals were assigned Nos. 1842-1844 MDA 2013.

[2] Pursuant to the Adoption Act, 23 Pa.C.S. § 2101, *et seq*. involuntary termination of parental rights is conducted under the jurisdiction of the orphans' court. Conversely, permanency planning for dependent children is conducted in the juvenile or family division under the aegis of the Juvenile Act, 42 Pa.C.S. § 6301, *et seq*. In these cases, the same trial judge presided over both matters.

[3] Where appropriate, we refer to CYS and the guardian *ad litem* collectively as Appellants.

[4] When the [C]hildren testified in the courtroom, Mother was excluded.

[5] Although the trial court styled its decision akin to a directed verdict, since these proceedings were not before a jury, we find that the court's decision is more aligned with a compulsory nonsuit. **See** Pa.R.C.P. 230.1.

[6] The in-chambers conference was not recorded. However, the trial court took judicial notice of its statement during a subsequent record proceeding.

[7] The guardian *ad litem* filed its notice of appeal from the orphans' court order on September 3, 2013, the first business day following the expiration of the thirty-day appeal period on Sunday, September 1, 2013, and the observance of Labor Day on September 2, 2013. The guardian *ad litem* appealed the September 19, 2013 juvenile court order within the thirty-day appeal period. As noted, CYS did not appeal the orphans' court order. It filed a notice of appeal from the juvenile court order on October 21, 2013, the first business day following the expiration of the thirty-day appeal period on Saturday, October 19, 2013. Hence, these appeals are timely.

(***In the Interest of K.D., A.D., and C.D.***, 1602 MDA 2013, 5/21/14, unpublished memorandum at *4-11 (footnotes in original; record citations omitted)).

In reversing the trial court's decision to dismiss CYS' petition to terminate Mother's parental rights this Court concluded, after a review of the record, that "CYS established its burden of proving by clear and convincing

evidence the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(8)." (**Id.** at *32-33). Left open, however, was the question of the bond between Mother and the Children because the trial court never reached the issue. In addressing this question, this Court observed:

> The extent of the orphans' court's bond-effect analysis depends upon the circumstances of a particular case. **In re K.Z.S.**, **supra** at 763. Instantly, the orphans' court did not engage in the § 2511(b) analysis because it had concluded that CYS failed to establish the statutory grounds for terminating Mother's parental rights pursuant to § 2511(a). While we are tempted, at least initially, to perform the required analysis in this children's fast track case based upon the ample evidence in the certified record, we are constrained to remand the matter to the orphans' court to perform the need-and-welfare analysis in the first instance.

> We observe that since the record contains abundant evidence regarding the existence and nature of the parent-child bonds and the developmental, physical, and emotional needs and welfare of the [C]hildren, additional hearings will not be required unless the orphans' court desires to update the [C]hildren's status on this record. Specifically, in its current form, the certified record includes Dr. Shienvold's testimony regarding his bonding assessment and his conclusion with a reasonable degree of psychological certainty that, while the [C]hildren maintain an attachment with Mother, in light of the strong bond that they have with the foster parents, the parent-child relationships can be severed in these cases without significant risk of long-term consequences. Essentially, Dr. Shienvold concluded that the [C]hildren's strong healthy bonds with the foster family would mitigate the risks associated with terminating their attachment to Mother.

> The certified record also includes testimony from the [C]hildren's therapist and foster parents that establishes that the [C]hildren are currently thriving in their pre-adoptive home. On remand, the trial court is directed to perform its needs and welfare analysis in light of the forgoing evidence and mindful of the [C]hildren's safety needs. Likewise, it must consider the

evidence establishing the love, comfort, security, and stability the [C]hildren enjoy with their foster family, the importance to the [C]hildren of continuing those beneficial relationships, and the fact that those relationships will mitigate the risks concomitant with severing their attachment to Mother.

(**Id.** at *35-36) (record citations omitted).

The trial court did take additional testimony in this matter in hearings held on January 28 and 30, February 19, and March 12 of 2015. Testifying at those hearings were CYS caseworker, Keri Coccagna; program director of Alternative Behavioral Consultants, Emily Bakner; psychologist, David Leaman, Ph.D.; licensed counselor, Kevin Haney; the Children's therapist, Donna Roland; the Children's grandfather, J.B.; Cumberland County CYS caseworker, Donna Kissinger; licensed professional counselor, Deann Blankenship-Sanders; Mother's husband, D.G., Jr.; psychologist, Timothy Gibian; Foster mother, D.R.; and program coordinator for Children's Aid Society, Stacy Gutshall. Mother testified on her own behalf. We note that it appears that all of these individuals, except the Children's foster mother, D.R., and Stacy Gutshall, were called to testify in Mother's case in chief.

The trial court entered its orders terminating Mother's parental rights pursuant to sections 2511(a)(8) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(8) and (b), and changing the Children's permanency goal to adoption, pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, on April 20, 2015. Mother filed her timely notice of appeal and concise statement of errors complained of on appeal on May 14, 2015. **See** Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following questions on appeal:

1. Whether [Mother] was denied substantive and procedural due process rights when the case was remanded by the Superior Court after the trial court *sua sponte* dismissed [CYS'] petition for termination of parental rights (TPR) and Mother was not afforded the opportunity to provide evidence in support of her position against termination of parental rights?

2. Whether the orphans' court committed an abuse of discretion and error of law when it constrained its review of the evidence for termination of [Mother's] parental rights under 23 Pa.C.S.[A.] §2511(a)(8) and §2511(b) to only the evidence that existed prior to the filing of the petition for termination of parental rights on June 18, 2013, despite the existence of compelling evidence that Mother had made extraordinary and measurable progress after the filing of the petition through court-ordered reunification counselors and her therapist?

3. Whether the orphans' court committed an abuse of discretion and error of law when it failed to properly give weight to the bonding efforts through a court-ordered reunification counselor and Mother's therapist that determined a strong bond existed and Mother's ability to parent her children was present?

(Mother's Brief, at 5) (quotation marks, emphases, and unnecessary capitalization omitted).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citation omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. . . .

*In re S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), and (b). (*See* Trial Court Opinion, 4/20/15, at 41). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

- 11 -

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*   \*   \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*   \*   \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

Instantly, as noted above, the trial court concluded that termination was appropriate under § 2511(a)(8).

With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence that (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. . . .

*In re Adoption of C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc*) (citations and quotation marks omitted).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Additionally,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In support of her first claim, that her due process rights were violated, Mother states:

> Mother's procedural due process rights were violated because the [o]rphans' [c]ourt failed to consider those post-petition efforts that occurred from August 2013 through May 21, 2014. For the reasons that are developed herein below, [t]his Honorable Court should not construe Sections 2511(a)(8) and 2511(b) conjunctively to allow termination of Mother's parental rights when post-petition efforts were court ordered and fulfilled. Rather, the compelling testimony of the witnesses, Dr. Timothy Gibian and Ms. Deann Blankenship Sanders, presented by [Mother] should have been considered by the [o]rphans' [c]ourt.

(Mother's Brief, at 30).

The trial court addressed this issue in its Pa.R.A.P. 1925(a) opinion, filed May 26, 2015, in which it stated correctly:

> Mother argues that she was denied her right to substantive and procedural due process on remand as she was not afforded the opportunity to provide evidence in support of her position against termination of parental rights. This claim lacks merit.

Mother was permitted to and in fact did offer evidence in defense of her parental rights, perhaps contrary to the directive of the Superior Court, on remand. In addition to her own testimony, Mother, over the course of several days, some of which scheduled to accommodate Mother's witnesses, produced the testimony of case worker, Kari Coccagna; parental fitness evaluator, Dr. David Leaman; counselor, Kevin Harney; ABC House program director, Emily Bakner; family therapist, Deann Blankenship-Sanders; Foster Mother, [D.R.]; Maternal Grandfather; and Mother's therapist, Dr. Timothy Gibian. A complete discussion of Mother's evidence appears in this [c]ourt's April 20, 2015 [o]pinion at pages 14-30. Given the opportunity to present evidence on her own behalf after remand, it is difficult to see how Mother's substantive or procedural due process rights were implicated.

(Trial Court Opinion, 5/26/15, at 4-5).

We fail to understand how Mother's due process rights were violated in this case. "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." **Everett v. Parker**, 889 A.2d 578, 580 (Pa. Super. 2005) (citations omitted). There is no question that Mother had notice of the proceeding and, as we explain, the trial court gave her an opportunity to be heard. In addition, this Court has concluded that subsection (b)'s restriction of a trial court's consideration of evidence only to that relevant to the time prior to the filing of a termination petition does not violate due process. **See Adoption of C.J.P.**, 114 A.3d 1046, 1056-57 (Pa. Super. 2015).

This Court, in the memorandum entered on May 21, 2014, found that there was sufficient evidence in the record to terminate Mother's parental

rights pursuant to subsection (a)(8). This Court also observed "since the record contains abundant evidence regarding the existence and nature of the parent-child bonds and the developmental, physical, and emotional needs and welfare of the [C]hildren, additional hearings will not be required unless the orphans' court desires to update the [C]hildren's status on this record." (*In the Int. of K.D.*, *supra* at *35).

The record reveals that, on remand, the trial court conducted four days of additional hearings in which it heard testimony from twelve witnesses, most of them called by Mother. Those witnesses gave testimony regarding the elements of subsection (a)(8) as well as subsection (b). Thus, the trial court gave Mother ample opportunity to be heard. There is no question that Mother was afforded due process in this proceeding.

Mother's claim that the trial court, "failed to consider those post-petition efforts that occurred from August 2013 through May 21, 2014[,]" (Mother's Brief, at 30), does not implicate due process. Subsection (b) provides, in pertinent part:

> With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b). The trial court gave Mother a full opportunity to be heard and then properly disregarded that part of the testimony she presented that was statutorily irrelevant to its deliberations. Mother's first claim is without merit.

In her second issue, Mother argues that the trial court erred when it refused to consider any evidence that related to the time after the filing of CYS' petition to terminate. (**See** Mother's Brief, at 30).

> Here, the clear and unambiguous language of the statute affords the only interpretation that would not otherwise lead to an absurd result. That is, the "efforts by the parent" cannot be considered and not the **efforts that are ordered to be undertaken by a court or the efforts of an agency**. (**See** Orphans' Court Order dated September 13, 2013; attached hereto as Appendix at "A57 "). Certainly had Mother engaged an individual therapist and a reunification counselor on her own to supply her and her family with services, it would fit squarely within the language of §2511(b). However, that is not the case. After determining that [CYS] had failed to provide reasonable efforts to reunify Mother and her children, the [o]rphans' [c]ourt specifically ordered [CYS] to engage an individual therapist, a reunification therapist, and coordinate those reunification efforts with the children's current therapist. (**See** September 13, 2013 Order).

(**Id.** at 33) (emphasis in original; footnote omitted).

Mother tortures the statute to make an absurd distinction between things she did, and things that the trial court ordered done for her by asserting that any post-petition court-ordered services in which she engaged were not "efforts by [Mother] to remedy the conditions" which led to the Children's placement. (**Id.** at 32). We note that subsection (8) does not require consideration of a parent's efforts to remedy the conditions that led to placement, but only whether "the conditions which led to the removal or placement of the child continue to exist" at the time the petition is filed. 23 Pa.C.S.A. § 2511(a)(8). Our examination of the record clearly indicates that the trial court did not err when it found that the conditions that led to the

- 17 -

placement of the Children still existed when CYS filed its petition to terminate Mother's parental rights. Any services the trial court might have ordered after CYS filed its petition could have no effect on conditions that existed pre-petition.

We quote the trial court's analysis of this issue, with approval:

> This [c]ourt can find no support for Mother's assertion that it could have or should have ignored the clear language of §2511(b) and considered evidence of her efforts and/or progress toward remedying the conditions which led to the [C]hildren's removal from her case **after** the date the TPR Petition was filed. The law is well-settled that efforts by a parent to remedy the conditions that led to the [C]hildren's placement that are initiated **after the petition has been filed** may not be considered by the court. *See* 23 Pa.C.S.A. §2511(b); *In re T.A.C.*, 110 A.3d 1028 (Pa. Super. 2015). Further, "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS services." *In re T.M.T.*, 64 A.3d 1119, 1125 (Pa. Super. 2013), quoting *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008). While the statute makes no exception for the scenario presented by this case, the purpose of the statute, to ensure timely permanency, would be frustrated by such a result.

(Trial Ct. Op., 5/26/15, at 6-7) (emphasis in original; footnote omitted).

Our review of the record reveals that the conditions that led to the placement of the Children, namely Mother's inability to see that her actions or failures to act place the welfare of the Children in jeopardy, existed at the time the petition was filed. Mother's second issue is without merit.

In her final issue, Mother complains that the trial court failed to give proper weight to evidence that indicated that a strong bond existed between herself and the Children. (*See* Mother's Brief, at 40). In support of her

claim, Mother revisits the evidence and asks us to reach a conclusion different from that reached by the trial court. (*See id.* at 41). This we may not do. As this Court has said:

> . . . The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citation omitted). In other words, the trial court, not this Court, is responsible for weighing the evidence. Absent an abuse of discretion, we will not disturb the trial court's findings. "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002) (citation omitted). We have examined the record and we are satisfied that the trial court did not abuse its discretion when it found that the termination of Mother's parental rights would serve the best interests of the Children. We quote the trial court's analysis of the Children's best interest pursuant to subsection (b), with approval:

> [CYS] called Dr. Kasey Shienvold ("Dr. Shienvold") in its case-in-chief on July 2, 2013 regarding the bonding assessment he performed on Mother and the [C]hildren in July, 2012. Specifically, Dr. Shienvold understood that his role was to assess 'the relationship and the bond that exist [sic] between the child [sic] and the parents to determine whether there is an increased risk for long term harm if that bond is severed. . .' Dr. Shienvold's report was made part of the record. He concluded,

- 19 -

At the time it was fairly clear that the attachment—while there was an attachment between [Mother] and the [C]hildren, it did not appear that the loss of that attachment would create significant risk of long term consequences given that they had available attachment figures who they had developed also strong relationships with in the foster parents.

Dr. Shienvold acknowledged on cross-examination that he had not performed any reevaluation of Mother and the [C]hildren since his assessment in July, 2012.

[Blankenship-]Sanders testified that the [C]hildren were bonded with Mother before the family therapy began (in October, 2013). She observed a strong bond between Mother and the [C]hildren. [Blankenship-]Sanders was of the opinion that reunification was appropriate and worked with Dr. Gibian and Roland to coordinate the effort to reunify the [C]hildren with Mother. However, [Blankenship-]Sanders' work with Mother and the [C]hildren ended in August, 2014, after this [c]ourt changed the permanency goal to adoption as directed by the Superior Court.

As to the parent/child bond, Roland acknowledged that the [C]hildren do love [Mother]. Roland explained that while the loss of [Mother] will cause the [C]hildren grief, leaving the foster family would also result in intense grief.

At this time, the [c]ourt has the very real benefit of hindsight. The [C]hildren have not visited with Mother since August, 2014. The have had only minimal contact through gifts and cards. They have chosen not to read the cards Mother sent, but rather to place them in a special keepsake box to read when they are ready. The evidence supports a finding that the [C]hildren's lack of contact with Mother has not proven to be detrimental over the intervening months. Instead, the [C]hildren seem to have recovered rather easily. They are more open about their feelings in their individual therapy with Roland. Their negative behaviors have decreased to the point of nearly disappearing. There are doing well both academically and behaviorally in school. Their behaviors in the foster home are appropriate.

[K.D.] is very open about his desire to be adopted. [A.D.] has more mixed feelings, but 'can find more reasons that it would be better for her to remain where she is,' according to

Roland. Roland has not observed anything in the [C]hildren's behaviors that would suggest that termination of Mother's parental rights would be detrimental to them beyond the typical grief and loss one would expect.

The [C]hildren have formed a parent-child bond with the foster parents. The [C]hildren look to the foster parents for love, guidance, support, comfort and security. They are certainly a part of the foster family and have bonded with the other children in the foster family. Importantly, the foster parents are an adoptive resource and desire to make all three children a permanent part of their family.

After careful consideration of the evidence, this [c]ourt must find that it is in the [C]hildren's best interests that Mother's parental rights be terminated, thereby freeing them for adoption and creating permanency in their lives. Further delay in establishing permanency would be harmful to the [C]hildren and is therefore not in the [C]hildren's best interests.

(Trial Ct. Op., 4/20/15, at 39-40) (record citations omitted). Mother's third issue is without merit.

Accordingly, for the reasons stated, we affirm the orders of the Court of Common Pleas of Franklin County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), and changed the Children's permanency goals to adoption under section 6351 of the Juvenile Act.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015

- 21 -