J-S06030-15

2015 PA Super 31

| IN THE INTEREST OF:  T.A.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  L.C. N/K/A L.F., MOTHER | |
| | No. 2708 EDA 2014 |

Appeal from the Order Entered August 18, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 12-2013-AD

\*\*\*\*\*

| IN THE INTEREST OF:  S.M.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  L.C. N/K/A L.F., MOTHER | |
| | No. 2754 EDA 2014 |

Appeal from the Order Entered August 18, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 11-2013-AD

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

OPINION BY LAZARUS, J.:  **FILED FEBRUARY 11, 2015**

L.C. (Mother), n/k/a L.F., appeals from the trial court's order involuntarily terminating her parental rights to her children, S.M.C. (born 05/2003) and T.A.C. (born 10/2006).[1]  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

In 2010, after Mother and Father separated, Father was awarded primary physical custody of Children as Mother's mental health issues rendered her incapable of providing care to Children. At that time, Mother was residing in Clewiston, Florida, with Children's maternal grandmother. In June 2011, Father allegedly kicked T.A.C. in the stomach; Father pled guilty to recklessly endangering another person[2] and recklessly endangering the welfare of children[3] and was incarcerated.[4] The parties subsequently entered into an informal agreement where Children remained in Father's home with his paramour, Roxanne Howland, during his period of incarceration. However, in November 2011, after Howland was incarcerated for drug-related offenses, the Children were placed into the protective custody of Wayne County Children and Youth Services (CYS) and were subsequently adjudicated dependent. Children have resided in the same pre-adoptive foster home since early 2012.

CYS drafted and implemented a permanency plan for Mother identifying Mother's mental health and need for stability as the major areas

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

[1] The parental rights of C.C., natural father of S.M.C and T.A.C., were terminated by the trial court on April 16, 2014. He is not a party to this appeal.

[2] 18 Pa.C.S. § 2705.

[3] 18 Pa.C.S. § 4304.

[4] Father was sentenced to serve a term of 9-23 months' incarceration in a county correctional facility.

of concern. CYS emphasized that Mother was to continue treatment with a psychiatrist and counselor, live a more independent life and be able to make good decisions in the best interests of the Children. Despite these goals, Mother repeatedly denied the fact that she had mental health issues and only after she was ordered by the court did she authorize the release of her medical records, which confirmed she has bi-polar disorder, with schizophrenic tendencies.[5]

After seeing no progress from Mother regarding her plan objectives, on May 15, 2014, CYS filed petitions to terminate Mother's parental rights to T.A.C. and S.M.C. On August 1, 2014, the trial court held a termination hearing[6] on both petitions and, on August 19, 2014, the trial court terminated Mother's parental rights to Children under sections 2511(a)(8) and (b)[7] of the Adoption Act.[8] This appeal follows.

_____

[5] Mother had, in fact, been hospitalized from December 2011 until sometime in 2012 after presenting in a psychotic state.

[6] At the time of the termination hearing, Mother still resided in Florida.

[7] Pursuant to section 2511(b):

> (b) Other considerations. --The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

*(Footnote Continued Next Page)*

On appeal, Mother raises the following issues for our consideration:

(1)     Whether the court erred in finding that Mother failed to perform her parental duties pursuant to 23 Pa.C.S. § 2511(a)(5).[9]

(2)     Whether the court erred in finding that termination would best serve the needs and welfare of the children pursuant to 23 Pa.C.S. § 2511(a)(8).

(3)     Whether the court erred in finding that termination would best serve the needs and welfare of the children pursuant to 23 Pa.C.S. § 2511(b).

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).

*(Footnote Continued)* _____

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

[8] *See* 23 Pa.C.S. §§ 2101-2938.

[9] The court's August 19, 2014 opinion indicates that termination was granted based upon sections 2511(a)(8) and (b). Therefore, we will confine our review to termination under those subsections of the Adoption Act.

Moreover, we review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.* Accordingly, we will analyze Mother's argument by examining the requirements of section 2511(a)(8), which requires CYS to prove, by clear and convincing evidence, that:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, **the conditions which led to the removal or placement of the child continue to exist** and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8) (emphasis added). Finally, where a parent has addressed some of the conditions that led to a child's removal, but other conditions still exist, a court may find that the above-bolded portion of section 2511(a)(8) has been satisfied. *In re D.A.T.*, 91 A.3d 197 (Pa. Super. 2014).

Instantly, Mother concedes that CYS proved the first two elements of section 2511(a)(8) – that the Children have been removed from her care for at least 12 months. Appellant's Brief, at 13. However, it is the latter portion of section 2511(a)(8), that the conditions which led to the removal or placement of the Children continue to exist, that she claims CYS has not proven. Specifically, Mother contends that she has continued treating with a doctor for her mental health issues, has made progress in that area, and is

capable of parenting Children with the assistance of maternal grandmother. She also asserts that she is "willing to participate in parenting classes and to learn new skills to identify issues and assist her children." Appellant's Brief, at 14.

While Mother may be willing to participate in parenting classes and is open to learning new skills to help care for Children, a trial court cannot consider any efforts by a parent to remedy the conditions that led to placement that are first initiated after the petition to terminate is filed. *See* 23 Pa.C.S. § 2511(b). Therefore, these intended "future" efforts are not a consideration in the court's termination decision.

With regard to termination under section 2511(a)(8), Mother testified at the termination hearing she was treating with Dr. Tabra, a psychiatrist, and that the doctor has seen improvement in her over the three years she has been in treatment. N.T. Termination Hearing, 8/1/14, at 34-35. Mother testified that she sees the doctor every three months, *id.* at 35, and that she was currently on medication for her mental health issues. *Id.* Finally, Mother testified that she sees a Lutheran pastor for counseling on relationship issues. *Id.*

While Mother asserts that she has been undergoing medical treatment for her mental health issues and is progressing positively in that area, the trial court ultimately concluded that, after more than 12 months of placement, Mother is still incapable of caring for Children due to her inability to stabilize, treat or manage her mental health issues. In the three years

that Children have been in placement, Mother has made almost no progress with her permanency plan, which included demonstrating consistent recovery behavior. There has been no improvement with Mother's ability to deal with CYS caseworkers, as well as her own Children. In fact, it took CYS almost one and one-half years, and only after she was ordered by the court, to secure Mother's signature on medical releases. The delay in securing the releases prevented CYS from verifying, from mental healthcare providers, Mother's compliance with goal objectives. At no time during Children's placement did Mother voluntarily provide CYS with mental health treatment/progress updates. Moreover, testimony at the termination hearing revealed that Mother does not routinely take her medications, which causes her conversations with Children to be confusing and disorganized and often results in psychotic experiences in the form of hallucinations, delusions and catatonia. Just as troubling is the fact that after these conversations, T.A.C. exhibits deviant behaviors[10] and violent tantrums and S.M.C. suffers severe anxiety attacks. N.T. Termination Hearing, 8/1/14, at 27-30.

Finally, the court doubted Mother's ability to parent independently, having lived with maternal grandmother in Florida since her separation, pre-placement, from Father. At the time of the termination hearing, Mother was

---

[10] After Skype calls with Mother, T.A.C. would exhibit self-soothing behaviors by masturbating and playing with her feces. N.T. Termination Hearing, 8/1/14, at 17.

still unable to have unsupervised visitation with or direct caregiver responsibilities for the Children and had never lived on her own. In fact, she had never had unsupervised visits with Children since they were in placement. Mother was unable to travel alone to Pennsylvania for a parental fitness evaluation at the request of CYS, despite the fact that she was offered free lodging and transportation. N.T. Termination Hearing, 8/1/14, at 14.

Considering the totality of concerns, coupled with Mother's failure to progress in her stated plan objectives, the trial court's decision to terminate Mother's parental rights under section 2511(a)(8) was neither an abuse of discretion nor an error of law. **In re A.R.**, **supra**. **See In re D.A.T.**, **supra** (Mother's failure to attend to own mental health treatment by refusing to sign medical releases as well as inability to recognize safety concerns of children justification for termination under section 2511(a)(8)). While Mother testified that she "tr[ies] to function as best as [she] possibly can," **id.** at 42, unfortunately, her best efforts to function (while taking her medications) do not meet the minimum level required to parent Children. The need for permanency and stability in Children's life supports termination under section 2511(a)(8). **In re S.H.**, 879 A.2d 802 (Pa. Super. 2005).

We also recognize that "a best interest of the child" analysis under both sections 2511(a)(8) and 2511(b) requires consideration of "[i]ntangibles such as love, comfort, security, and stability." **In re C.P.**, 901 A.2d 516, 520 (Pa. Super. 2006). To this end, this Court has indicated that

the trial court "must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. *In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc). Moreover, in performing a "best interests" analysis:

> The court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. *In re Adoption of K.J.*, [] 936 A.2d 1128, 1134 (Pa. Super. 2007). The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, [] 761 A.2d 1197 (Pa. Super. 2000). Most importantly, adequate consideration must be given to the needs and welfare of the child. *In re J.D.W.M.*, [] 810 A.2d 688, 690 (Pa. Super. 2002).

*In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008).

With regard to section 2511(b), Mother maintains weekly contact with Children via Skype; she also sends them letters and packages. She has only seen them face-to-face, however, four times[11] in over two years since their placement, which is no doubt attributable to the expense of traveling from Florida to Pennsylvania. Mother claims that "she has a strong bond with her children and that bond is worth saving," Appellant's Brief at 19, and that if her rights are terminated "the children will suffer irreparable harm." *Id.* at 20. However, the primary caseworker from CYS testified that even though there may be an existing parent-child bond, if that bond were severed by termination it would have a positive impact on Children, who are eager to be

_____

[11] These visits occurred in March 2012, June 2012, July 2013 and July 2014.

adopted and live like normal children without agency and court supervision. N.T. Termination Hearing, 8/1/14, at 16.

The record also bears out the finding that Children's foster parents are anxious to adopt Children, have been proactive in addressing the various emotional and behavioral issues exhibited by Children, and that Children consider foster parents to be their mom and dad. *Id.* at 20. Children look to foster parents as a source of comfort and security. *Id.*

The fact that Mother's significant mental health issues still exist supports the trial court's conclusion that her parental rights should be terminated; the conditions which led to Children's placement continue to exist and termination of Mother's rights would best serve the needs and welfare of Children. *See* 23 Pa.C.S. § 2511(a)(8); *see also In re S.H.*, 879 A.2d 802 (Pa. Super. 2005). Moreover, Mother simply cannot meet "the developmental, physical and emotional needs and welfare of the child[ren]," 23 Pa.C.S. § 2511(b), and severing the parent-child bond would not have a detrimental effect on Children. *Id.* Finally, the positive impact that the foster parents have had on the Children's emotional and developmental needs is significant. *In re A.S.*, 11 A.3d 473 (Pa. Super. 2010) (as part of bonding analysis under section 2511(b), court can emphasize safety needs of child, and should also consider intangibles, such as love, comfort, security, and stability child might have with foster parent). Accordingly, we find that the trial court's decision is supported by competent evidence. *In re A.R.*, *supra*.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/11/2015