J-S35013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: I.J.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R.A.-S., FATHER | No. 1822 WDA 2016 |

Appeal from the Decree October 28, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 39 In Adoption 2016

BEFORE:  LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 06, 2017**

L.R.A.-S. (Father) appeals from the decree, entered in the Court of Common Pleas of Erie County, involuntarily terminating his parental rights to his minor daughter, I.J.A. (Child), (born 6/2013), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), & (b) of the Adoption Act.[1]  Father's counsel has also filed a petition to withdraw from representation, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. McClendon**, 434 A.2d 1185, (Pa. 1981).  After careful review, we affirm and grant counsel's petition to withdraw.

Child was born in June 2013 in Marion, Florida.  In July 2014, Mother moved to Erie County, Pennsylvania, with Child; Father remained in Florida

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 23 Pa.C.S. §§ 2101-2910.

where he was incarcerated on a probation violation in Marion County jail.[2]

On October 31, 2014, Child was removed from Mother's[3] care and placed in the temporary protective custody of Erie County Office of Children and Youth (ECOCY/the Agency); the Agency had concerns about Mother's history of drug abuse, unstable mental health, and unstable housing. On November 4, 2014, the Agency filed a dependency petition alleging that Child was without proper parental care or control due to Mother's drug and mental health issues and Father's incarceration. After a hearing, Child was adjudicated dependent on November 18, 2014.

After a dispositional hearing in December 2014, the court implemented permanency plans for Mother and Father. Father's plan included the following conditions: that Father contact the Agency upon his release from prison in order to have a treatment plan, including visitation, developed; and that Father avail himself of any services that he may benefit from while incarcerated. At subsequent permanency hearings held in April 2015, June 2015, and October 2015, the court found that Father was not in compliance with the plan. Following the October 2015 permanency hearing, Child was

_____

[2] Father has a criminal history dating back to 2010, in Florida, for strong armed robbery, resisting arrest, fleeing and eluding law enforcement, battery, and grand theft auto.

[3] On October 29, 2016, the court entered a decree acknowledging that Mother executed a consent to adopt petition with regard to Child and that her parental rights were terminated. Decree, 10/27/16. Mother is not a party to this appeal.

returned to Mother's care. In December 2015, Child was removed from Mother's care and placed in the protective physical and legal custody of the Agency. At a January 2016 combined shelter care and permanency hearing, the court found sufficient evidence was presented to prove that continuation or return of Child to parents was not in her best interest; the court ordered the placement goal be changed to adoption. Child was placed in a pre-adoptive foster home where she bonded with her foster family.

On May 11, 2016, the Agency filed a petition to involuntarily terminate Mother's and Father's parental rights to Child. On October 28, 2016, the court held a termination hearing at which Father, ECOCY caseworkers and counselors, and Child's foster mother testified. On October 28, 2016, the court entered an order terminating Father's parental rights to Child. On November 23, 2016, Father's attorney, W. Charles Sacco, Esquire, filed a timely notice of appeal as well as a statement of intent to file an *Anders* brief, alleging that "no-non-frivolous appellate issues exist and [that he] intends to file a Petition to Withdraw as counsel and brief [and that he] filed this statement in lieu of a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(c)(4)." *See In the Interest of J.T.*, 983 A.2d 771, 772 (Pa. Super. 2009) (applying *Anders* procedures and Rule 1925(c)(4) to appeals involving the termination of parental rights).

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points he deems worthy of the court's attention.

*In re: S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (emphasis in original) (citation omitted). Moreover, "[w]hen considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *Id.* at 1237. In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, i.e., the contents of an *Anders* brief, and instructed that the brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. After our Court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, our Court then undertakes an independent examination of the record to determine whether the appeal is wholly frivolous. *In re: S.M.B.*, *supra*.

- 4 -

With respect to the third requirement of **Anders**, that counsel inform the defendant of his rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his] petition to withdraw a copy of the letter sent to [his] client advising him . . . of [his] rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, Attorney Sacco filed a petition indicating that he reviewed the record and determined that an appeal would be frivolous. Petition for Leave to Withdraw as Counsel, 3/10/17, at ¶ 5. In his petition, counsel refers to any issues he believes could arguably support an appeal, including anything in the record that could support an appeal. Attached to his petition to withdraw, counsel included a copy of the letter he sent to Father. In this letter, counsel informed Father of his intention to seek leave to seek permission to withdraw because there are no meritorious issues. Letter, 3/8/17. In that letter counsel also advised Father that he has the right to retain new counsel, proceed *pro se*, and to raise any points he believes are worthy of this Court's attention. **Id.** Accordingly, we conclude that counsel has complied with the aforementioned requirements, and will proceed to address the merits of the issued raised on appeal as well as conduct our own independent review of the entire record.

On appeal, Father presents the following issues for our review:

(1) Whether the orphan's court commit[t]ed an abuse of discretion or error of law when it concluded that the [Erie County Office of Children & Youth (ECOCY)] established grounds for termination of parental rights under 23 Pa.C.S.A. [§§ ]2511(a)(1)(2)(5) and (8)[?]

2. Whether the orphan's court commit[t]ed an abuse of discretion or error of law when it concluded that the termination of appellant's parental rights was in the child's best interest pursuant to 23 Pa.C.S.A. [§§] 2511(b)[(1)] including the developmental, physical and emotional needs and welfare of the child[?]

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.* Moreover,

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under

23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).[4]

After reviewing the parties' briefs, the record, and the relevant case law, we affirm the trial court's order involuntarily terminating Father's parental rights to Child on the basis of the well-written decision authored by the Honorable Robert A. Sambroak, Jr. Father was incarcerated in Florida at the time that Child was adjudicated dependent. Even after his release from prison in early 2015, he only saw Child on one occasion and talked to her on the phone twice. During the entire time of her placement, Father never sent Child birthday cards, gifts or letters. Father was arrested again in Florida in September of 2015 for unarmed burglary and is currently serving a sentence of 188 months' imprisonment.[5]

Child is thriving with her pre-adoptive, foster family. The record bears out the fact that Father has failed to assert a place of importance in Child's life while he has been incarcerated, even acknowledging that he was not in a position to parent Child. **See** N.T. Termination Hearing, 10/28/16, at 24, 29 ("I don't have any resources to be able to write . . . letters or call . . . any

---

[4] We note that this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **In re M.T.**, 101 A.3d 1163, 1179 (Pa. Super. 2014) (en banc).

[5] Father testified that his conviction is on appeal and that if he is afforded relief he could receive a reduced sentence of five years' imprisonment. **See** N.T. Termination Hearing, 10/28/16, at 24.

time I want to."); ***see also In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012) (while incarceration neither compels nor precludes termination, it is potentially determinative factor in court's conclusion that grounds for termination exist under section 2511(a)(2) where repeated and continued incapacity to parent due to incarceration has caused child to be without essential parental care, control or subsistence and causes of incapacity cannot or will not be remedied).

Moreover, Father simply cannot meet the "developmental, physical and emotional needs and welfare of [Child]." 23 Pa.C.S. § 2511(b). Father has not seen Child for most of her young life; there is no apparent parent-child bond. The positive impact that Child's pre-adoptive foster parents have had on Child's emotional and developmental needs is significant and supports the trial court's decision to terminate Father's parental rights under section 2511(b). ***See In the Interest of T.A.C.***, 110 A.3d 1028 (Pa. Super. 2015).

We instruct the parties to attach a copy of Judge Sambroak's decision in the event of further proceedings in the matter.

Order affirmed. Petition to Withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/6/2017

| IN THE MATTER OF | : | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | : | |
| THE ADOPTION OF | : | OF ERIE COUNTY, PENNSYLVANIA |
| | : | ORPHANS' COURT |
| | : | |
| I███████ J██████ A██████ | : | |
| | : | NO. 39 IN ADOPTION 2016 |

## 1925 (a) OPINION

On October 28, 2016, a decree was entered terminating the parental rights of the natural father, L████ R██████ A███-S██████ (Appellant), to his minor child, I██████ J██████ A████ (I.A.). He filed a timely Notice of Appeal and a Statement of Intent to File an Anders Brief. A review of the record shows there are no issues of merit and that the Agency met its burden in establishing grounds for termination under 23 Pa. C.S.A. §2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) by clear and convincing evidence. It is therefore respectfully requested the Superior Court affirm the decree.

## PROCEDURAL HISTORY AND FACTS

On October 31, 2014, I.A. was removed from the care of the mother and placed in the temporary protective physical and legal custody of the Erie County Office of Children and Youth (Agency). *Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16, p. 2.*

On November 18, 2014, I.A. was adjudicated dependent. Mother was incarcerated in the Erie County Prison and Appellant was incarcerated in Florida. The Agency was particularly concerned about the mother's history of drug abuse, unstable mental health, and unstable housing. The Agency also noted Appellant had a lengthy criminal history, was currently incarcerated, and unsure of his release date. His role actively parenting I.A. was negligible. *See*



FILED
DEC 16 2016
Register of Wills

12.

*Permanency Review Hearing Summary, 10/3/16, p. 1. See also Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16.*

A dispositional hearing took place on December 5, 2014. Appellant was present at the dispositional hearing by telephone. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 46.*

The first permanency review hearing took place on April 29, 2015. Appellant was not present, but was represented by counsel. At the time of this hearing, Appellant was in complete non-compliance with the treatment plan. Despite contacting the Agency when he was released from prison in Florida, the numerous contact numbers he left with the Agency were out of service. At the conclusion of the hearing, the trial court ordered Appellant contact the Agency to set up a treatment plan and visitation, and ordered the goal remain reunification. *Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16, pg. 6-7.*

The second permanency review hearing took place on July 6, 2015. Appellant was not present, but was represented by counsel. Once again, Appellant failed to comply with the permanency plan. Nevertheless, the goal of the proceedings remained reunification, since the mother made significant progress. The matter was scheduled for a three month review. *Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16, p. 9.*

The third permanency review hearing took place on October 26, 2015. Appellant was not present due to incarceration in Florida, was not represented by counsel, and once more failed to comply with the treatment plan or the trial court's directive to contact the Agency. Despite Appellant's lack of progress, the child's mother demonstrated significant compliance with her treatment plan, and the child was returned to her care. A review was scheduled for three months.

*Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16, p. 10-11.*

Unfortunately, I.A. was removed from the mother's care on December 14, 2015 and returned to the foster family after the mother relapsed on drugs. A second shelter care and additional permanency review hearing took place on January 6, 2016. Appellant was represented by counsel, remained incarcerated, and therefore was not present at the hearing. Once again, Appellant failed to contact the Agency to set up an individualized treatment plan, visitation schedule, or otherwise contact the child. The goal of the proceedings was changed to adoption. Services to the Appellant were terminated and the Agency was ordered to file a termination petition as soon as practicable. *Petition for the Involuntary Termination of Parental Rights to a Child under the Age of 18 Years, 5/1/16, p. 12-13. Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 49-50.*

The hearing to terminate Appellant's parental rights was held on October 28, 2016. Appellant, though represented, was once again not present and participated in the hearing via telephone from USP Coleman I, a federal, high security penitentiary in Florida. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 4-5, 22.*

The testimony at the termination hearing reviewed many of the concerns the Agency discussed at the permanency review hearings and thoroughly discussed Appellant's criminal history and lack of contact with the child. The evidence indicated Appellant was incarcerated at the Marion County Jail in Florida when the child was adjudicated dependent in Erie, Pennsylvania. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 9-11.*

After his release from the Marion County Jail, Appellant travelled to Erie with his mother to find work and visit the child. Appellant contacted the Agency and had one visit with I.A. in

14.

February, 2015, before returning to Florida to collect his things and move back to the Erie area. Appellant left a Florida contact number with the Agency. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 14, 16.*

Appellant returned to the Erie area in late March or early April, 2015. At that time his Florida contact number was supposedly still in service. Shortly thereafter, Appellant either obtained a different phone number or lost his phone connectivity, leaving the Agency no way to contact him. Eventually, Appellant moved to Ohio, where he worked for about a week, before returning to Florida again. Appellant provided an Ohio phone number to the Agency. However, when caseworkers later attempted to contact him at this number, they found it was no longer in service. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 19-21.*

After Appellant returned to Florida a second time, he lived with his mother until he was arrested for bank robbery without a firearm. Appellant was sentenced to 188 months incarceration and transferred to USP Coleman I to serve his sentence. Appellant stated his sentence was currently on appeal, and if he won, his sentence would be reduced from 15 years to five (5) years'. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 21-24.*

Appellant's statements he tried contacting the child, Agency, or foster parents throughout the course of the dependency proceedings as many as "five, ten, 15,..., or 30 times" were directly contradicted by the Agency caseworker, social service aide, and the child's foster mother. The social service aide testified the caseworker gave her a phone number associated with the Appellant, attempted to contact him at least two times at that number, and left messages for him, but received no return phone call. These attempts were specifically made for the purpose of setting up visitation. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 15, 32.*

15.

The foster mother testified that over the course of the proceedings, she spoke with Appellant twice on the phone. These phone calls occurred "towards the end of February in 2015" and were right after Appellant's first visit with the child, more than one year before the termination proceedings. The foster mother explained she called Appellant three or four weeks in a row, with no response, and asked the Agency if she needed to continue calling him. At that point, the Agency provided the foster parents' phone number to the Appellant. However, Appellant never called the foster parents. His only phone contact with the family occurred on the two occasions he answered his phone when the foster family called him. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 35-41.*

Both Agency case workers confirmed Appellant had one visit with the child in February of 2015. Appellant did not contact the caseworker to schedule an additional visit. When the caseworker tried to reach out to Appellant through the Ohio phone number, she found it was no longer in service. Appellant did not provide the caseworker with an alternate number or physical address. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 46-48.*

While the child was in placement, Appellant only spoke with the child on the phone twice, and never sent birthday cards, gifts, or letters. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 42-43.* When asked to explain this lack of effort, Appellant pointed to his "lack of resources," or blamed his mother, stating she was trying to call the Agency, and had been calling the Agency, after he was arrested. Appellant gave no credible explanation for his inability to send gifts or letters to the Agency for the child, and admitted that his lengthy incarceration did not put him in a position to parent the child. At some points, Appellant claimed ignorance of the permanency hearings, and at other times claimed he attempted to contact Agency workers or left messages numerous times to maintain contact with the child,

16.

suggesting he indeed had notice of the hearings. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 24-26, 72-73, 88.*

All Agency workers agreed the child was strongly bonded to her foster parents, who were willing to adopt her. At the time of the termination hearing, the child was three years old, and lived with her foster family for at least two years. Essentially, the child's foster family was the only family she knew. The child looked to her foster parents for comfort and love. Additionally, the child was bonded to another child near her age in the home. The child had no special needs and was otherwise healthy and developmentally on track. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 51-54, 60-62.*

Both the permanency caseworker and the ongoing caseworker expressed doubt the child would recognize the Appellant as her father. In their opinion, she was in no way bonded to him. Additionally, the ongoing caseworker noted Appellant's lengthy period of incarceration, spanning at least five, if not up to 15 years, would not put him in a position to parent the child for a significant period of time. Waiting on the Appellant's release from jail would leave the child without stability, and keep her from maintaining a healthy attachment to the foster family. The ongoing and permanency caseworkers agreed it was in the child's best interests Appellant's rights to her be terminated. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 51-54, 60-62.*

At the conclusion of the termination hearing, the trial court determined the Agency established grounds for termination under 23 Pa.C.S.A. §2511(a)(1), (a)(2), (a)(5), and (a)(8) by clear and convincing evidence and that termination of Appellant's parental rights was in the child's best interests pursuant to 23 Pa.C.S.A. §2511(b).

17 .

Counsel for the Appellant filed a Notice of Appeal and Statement of Intent to file an *Anders* Brief on November 23, 2016.

## ISSUES PRESENTED

After review of the record, the only issue of possible arguable merit that could be raised on appeal is one challenging the sufficiency of the evidence supporting the trial court's findings under subsections (a)(1), (a)(2), (a)(5), (a)(8), and (b).

## STANDARD OF REVIEW

When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the trial court's findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion. *In re S.P., 47 A.2d 817, 826 (Pa. 2011).* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*

The appellate court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of 2511(a). *In re M.T., 101 A.3d 1163, 1179 (Pa. Super. 2014)(en banc).*

## DISCUSSION

In a termination of parental rights hearing, the initial focus is on the conduct of the parent. The Agency "must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007).* Once these statutory grounds exist, the court may analyze whether it is in the best interests of the child for parental rights to be terminated. *Id.* One major aspect of this analysis includes "the nature and status of the emotional bond between parent and

16.

this end, and would disrupt the healthy bond the child currently shares with her foster family. *Involuntary Termination of Parental Rights Transcript, 10/28/16, p. 51-54, 60-62.*

## CONCLUSION

Appellant consistently demonstrated he was unwilling to maintain meaningful contact with the child and follow through with Agency directives to preserve his parental rights. Clear and convincing evidence exists to show termination of Appellant's parental rights was proper and serves the best interests of the child. It is respectfully requested the Superior Court affirm the Decree terminating Appellant's parental rights to the child.

Dated this ___16___ day of December, 2016

BY THE COURT:

_____ J.
ROBERT A. SAMBROAK, JR.

cc:    Kevin Jennings, Esq.
OCY Legal Department

W. Charles Sacco, Esq.
525 West 10th Street
Erie, PA 16502

Patricia Ambrose, Esq.
731 French Street
Erie, PA 16501

Jessica Fiscus, Esq.
1001 State Street, Suite 1400
Erie, PA 16501